Drew G. Johnson (OSB No. 114289)
LEIMAN & JOHNSON, LLC
44 W. Broadway, Suite 326
Eugene, OR 97401
drew@leimanlaw.com

Alan J. Leiman (OSB No. 98074)
LEIMAN & JOHNSON, LLC
44 W. Broadway, Suite 326
Eugene, OR 97401
alan@leimanlaw.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| **WILLIAM T. GERHART,** | **CASE NO**.: 6:16-cv-2379 |
| Plaintiff, | |
| | **FLSA OVERTIME COMPLAINT** |
| v. | Fair Labor Standards Act 29 USC § 201 *et seq*. |
| **MID-VALLEY METALS, LLC** an Oregon limited liability company, | |
| | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff, WILLIAM "THOMAS" GERHART (hereinafter, "Gerhart" or "Plaintiff"), brings this Fair Labor Standards Act ("FLSA") Complaint against Defendant, MID-VALLEY METALS, LLC an Oregon limited liability company (hereinafter, "MVM," or "Defendant"). Plaintiff makes his allegations based upon personal knowledge, information, and belief.

## INTRODUCTION

1.     Defendant MID-VALLEY METALS, LLC is an Oregon Limited Liability Company with its principal place of business located in Eugene, Oregon.

2.     Defendant is subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

1 – Complaint

3.      On or about June 6, 2014, Defendants hired Plaintiff to perform inside sales and customer service at Defendant's offices located in Eugene, Oregon.

4.      Plaintiff voluntarily terminated his employment with Defendant on or about March 1, 2016.

5.      During the course of his employment, Plaintiff was misclassified as exempt from the overtime provisions of the FLSA; he was regularly required to work more than 40 hours per workweek ("overtime") without additional compensation; and therefore, he is entitled to unpaid overtime compensation, liquidated damages, penalties, and attorneys fees.

6.      This action seeks equitable relief, compensatory and liquidated damages, attorney's fees, taxable costs of court, pre- and post-judgment interest for Defendant's willful failure to pay wages, including overtime wages, and other relief pursuant to 29 U.S.C. § 261(b).

7.      Plaintiff demands a jury trial on all issues that may be tried to a jury.

8.      This action is authorized and instituted pursuant to the FLSA, 29 U.S.C. § 201 *et seq*.

## PARTIES

9.      Plaintiff Gerhart is a resident of Lane County, Oregon and was employed by Defendant MVM at the Defendant's Eugene, Oregon location.

10.     Defendant MVM is an Oregon limited liability company, owned and operated by its member, Richard A. Locke, that fabricates custom ordered metal parts for its customers.

## JURISDICTION

11.     Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b), as this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.; and 28 U.S.C. §1337, as it arises under acts of Congress regulating commerce.

12.    The United States District Court for the District of Oregon has personal jurisdiction because the Defendant is an Oregon limited liability company with its principal place of business located in Lane County, Oregon.

13.    Venue is proper in this District Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this complaint occurred in the District of Oregon.

14.    At all times material to this Complaint, Defendant owned an operation that was an enterprise in interstate commerce or in the production of interstate commerce as defined by the FLSA, 29 U.S.C. § 203(r) and § 203(s). Based upon information and belief, the annual gross sales volume of the Defendant's business was in excess of $500,000.00 per annum at all times material hereto.  Alternatively, the Plaintiff worked in interstate commerce so as to fall within the protections of the FLSA.

15.    At all times material hereto, Defendant managed, owned and/or operated a business that fabricated metal parts for its customers. Defendant's owner exercised exclusive authority to hire and fire employees and maintained close control over day-to-day financial decisions of Defendant. By virtue of such authority and control, Defendant was an employer of Plaintiff; as such term is defined by the Act.  29 U.S.C. § 201 *et seq.*

16.    Defendant directly or indirectly acted in the interest of an employer towards the Plaintiff at all material times, including without limitation, directly or indirectly controlling all employment terms and conditions of the Plaintiff and Defendant's other employees.

17.    At all material times, hereto, Plaintiff performed duties for the benefit of, and on behalf of Defendant.

18.    At all material times hereto, Defendant failed to comply with Title 29 U.S.C. §§ 201-209 in that the Plaintiff performed services and labor for Defendant for which Defendant failed to

pay the correct amount of overtime when due. Plaintiff is entitled to liquidated damages for Defendant's willful failure to pay overtime when due.

19.    Plaintiff has retained the law firm of Leiman & Johnson, LLC to represent him and has incurred attorneys' fees and costs in bringing this action.    Pursuant to 29 U.S.C. § 216(b) Plaintiff is entitled to recovery of reasonable attorneys' fees and costs.

### FACTS

20.    Plaintiff was hired on or about June 6, 2014.  At the time of his hire, Plaintiff was paid $42,000 annually.  Plaintiff's annual pay was increased to $44,500 on or about March 9, 2015. On June 8, 2015, Plaintiff was promoted to head sales and customer service and paid $55,000 until January 22, 2016 when his pay was increased to $62,000 annually.  Plaintiff voluntarily terminated his employment with Defendant on March 1, 2016.

21.    Throughout his employment with Defendant, Plaintiff's primary duty was inside sales and customer service.  This work involved taking phone calls and responding to emails from Defendant's customers who were placing orders and awaiting delivery of orders for the fabrication of metal parts by Defendant.

22.    Plaintiff's tasks included corresponding by phone and email with Defendant's customers, reviewing customer orders, entering customer orders into a computer program, and retrieving information from Defendant's project management program, and communicating with Defendant's customers and its production department.

23.    Plaintiff was employed to take orders for the products and services that Defendant sold to its customers and to provide customer service to Defendant's customers seeking information related to the status of their orders.

24.     During his employment, Plaintiff was engaged by Defendant to directly support the production and delivery of the goods and services offered by Defendant to its customers.

25.     Defendant's project management program, known as "Job Boss," assigned a project number for each customer order, generated cost, price, and scheduling information, tracked production progress and costs, maintained a production materials inventory, and served as the primary source of information related to the cost and production status of each job.

26.     During his employment, Plaintiff was given the title of "sales estimator."  Regardless of his title, Plaintiff was primarily engaged in inside sales and customer service, which involved taking phone and email orders from customers and placing those orders with Defendant's fabrication department and communicating with Defendant's customers about the status of their orders.

27.     Plaintiff occasionally worked with employees in Defendant's engineering and fabrication departments to formulate new cost estimates for unique parts or projects.

28.     On occasion, when a customer placed an unusual or custom order, and where the project cost or specific part pricing was unknown, Plaintiff used information contained on Defendant's project management program and worked with the Defendant's engineering and fabrication departments to determine an appropriate cost estimate and pricing structure for the project in order to set a sales price.

29.     Defendant's owner maintained significant control and final approval authority over the setting of prices for new and unique projects where the cost and/or sales price was not known or previously established.

30.     Cost estimating was an ancillary job function and was not Plaintiff's primary duty.

31.     The majority of Defendant's customers' orders were placed by Defendant's relatively small group of regular customers for parts that were similar, if not identical in nature to previously ran jobs, with previously established pricing.  Therefore, the vast majority of the work performed by Plaintiff was related to repeat orders from previously ran jobs and project pricing or cost estimating made up only a small portion of Plaintiff's duties.

32.     Repeat, or previously ran job orders from Defendant's customers did not involve cost estimating.

33.     Plaintiff estimates that as much as 80 percent or more of his work was related to repeat orders from Defendant's regular customers.

34.     Because Defendant's sales and production management operations were integrated through a single production management program, and because a significant amount of the work orders were for "previously ran jobs," Plaintiff's sales and customer service related work required very little discretion or independent judgment, and rarely required him to prepare new cost estimates subject to approval by Defendant's owner.

35.     During the time Plaintiff worked under the job title of "inside sales manager," he functioned as a lead worker – attending staff meetings and providing assistance to the less experienced inside sales estimators regarding their sales and customer service duties while still performing the same job duties he had performed since the beginning of his employment with Defendant.

36.     Between June 8, 2015 and January 1, 2016, Defendant employed a total of three inside salespersons including Plaintiff.

37.     Between January 1, 2016 and March 1, 2016, Defendant employed a total of two inside salespersons including Plaintiff.

38.    At no time during Plaintiff's employment by Defendant did he have or exercise any authority to hire or fire other employees.

39.    At no time during Plaintiff's employment by Defendant did he actually participate in the hiring or termination of any other employees.

40.    Plaintiff did not exercise discretion or independent judgment with respect to matters of significance related to the management or administration of Defendant's business operations and his work was not directly related to the management or general business operations of Defendant's customers.

41.    At all times material, Plaintiff's primary duty did not include the use of independent judgment or discretion with respect to matters of significance regarding Defendant's business operations.

42.    Plaintiff's primary duty included taking orders from Defendant's customers, scheduling production of goods produced and sold by Defendant, communicating with Defendant's customers regarding the status of their orders.

43.    Plaintiff was a non-exempt employee under the FLSA.

44.    Defendant bears the burden of proving Plaintiff was exempt from the overtime provisions of the FLSA and Oregon Wage and Hour Laws.

45.    During his employment with Defendant, Plaintiff routinely worked in excess of 40 hours in a workweek, yet he was paid the same amount every two weeks (depending on his annual salary at the time) regardless of the number of hours worked each week.

46.    Defendant required Plaintiff to work in excess of 40 hours per week including weekends.

47.    Defendant's owner told Plaintiff, "Weekends are not sacred."

48.    Defendant did not require its non-salaried hourly employees to work overtime without additional overtime compensation.

49.    Plaintiff was, on at least one occasion during his employment, required by Defendant to assist Defendant in moving its operations from one location to another on a weekend without additional compensation.   Plaintiff performed this manual labor for Defendant without any compensation whatsoever.   Only those employees earning a fixed salary were required to help Defendant move its operations; hourly employees were not asked or required to help Defendant move.

50.    Records showing the precise amount of time worked by Plaintiff are in the possession and control of Defendant.

51.    Defendant knew or had reason to know the scope and extent of Plaintiff's hours worked because: Defendant required Plaintiff to work more than 8 hours per day and weekends; it collected weekly work summaries and reports from Plaintiff; it reviewed weekly performance records; and it produced other productivity reports.

52.    Defendant routinely required Plaintiff to work in excess of 40 hours per seven-day workweek.

53.    Throughout his employment by Defendant, Plaintiff routinely worked in excess of 40 hours per seven-day workweek.

54.    Defendant knew Plaintiff was not being paid for all hours worked.

55.    Defendant knowingly and intentionally misclassified Plaintiff as exempt from the overtime provisions of the FLSA.

56.    Defendant willfully failed to pay Plaintiff time and one-half his regular rate of pay for all hours worked over 40 in a workweek.

57.     Plaintiff has not been paid one and one-half times his regular rate of pay for all hours worked over 40 hours in a workweek.

58.     Plaintiff did not ask to be paid hourly and compensated for his overtime hours because he believed he would face retaliation and adverse employment actions by Defendant.

59.     Plaintiff brings this action seeking unpaid overtime compensation, liquidated damages, pre-judgment interest, costs, and attorneys' fees arising from the law violations set forth herein.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violation - 29 U.S.C § 207)**

60.     Plaintiff re-alleges and incorporates herein by reference, all allegations contained in paragraphs 1 through 59 above.

61.     At all material times Defendant was required to pay the Plaintiff in accordance with the overtime provisions of the FLSA.

62.     Plaintiff brings this action under § 216(b) of the FLSA against Defendant for unpaid overtime compensation, liquidated damages, and any other available remedy.

63.     Throughout his employment at MVM, Plaintiff regularly worked more than 40 hours in a seven-day workweek and typically worked 10 hours per day Monday through Friday, and frequently worked weekends.

64.     For example, during the period from January 1, 2016 to January 15, 2016 Plaintiff estimates that he worked an average of 60 hours per workweek.  During this period, Plaintiff was paid $2,115.38.  He received this same amount every two weeks, which was for two weeks of his annual salary of $55,000.

65.     Defendant willfully failed to pay Plaintiff at time and one-half regular rate of pay for all hours worked over 40 in a workweek, resulting in the underpayment of overtime to the Plaintiff.

66.     Defendant has not paid Plaintiff the correct amount of overtime wages earned.

67.     Defendant violated §207 of the FLSA when it willfully failed to pay overtime to the Plaintiff at one and one-half times his regular rate of pay for all hours worked over 40 in a workweek during the previous three years or the applicable statutory period.

68.     Defendant's failure to pay the Plaintiff all overtime earned at one and one-half times the correct regular rate of pay resulted from the following willful acts:

> a.     Defendant knowingly misclassified Plaintiff as exempt from the overtime provisions of the FLSA;
>
> b.     Defendant knowingly paid Plaintiff a salary based on a 40 hour workweek and did not pay for hours worked over 40 in a workweek regardless of the number of hours actually worked by Plaintiff each week;
>
> c.     Defendant knowingly paid Plaintiff in a manner that resulted in the underpayment of overtime pay to Plaintiff;

69.     As a result of Defendant's willful failure to pay the Plaintiff all of the overtime he earned each week, the Plaintiff has incurred actual damages and is entitled to liquidated damages.

70.     By reason of said intentional, willful, and unlawful acts of Defendant, Plaintiff has suffered damages and has also incurred costs and reasonable attorneys' fees.

//

//

//

//

//

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully asks the Court to grant him the following relief:

1.      On his First Claim, award Plaintiff his actual damages for unpaid overtime in an amount to be determined at trial, plus an equal amount as liquidated damages for failure to pay overtime pursuant to 29 U.S.C. §207.

2.      Award Plaintiff reasonable attorney fees and costs;

3.      Award Plaintiff pre-judgment and post-judgment interest; and

4.      Award Plaintiff any and all such other legal and equitable relief as this Court deems just and proper.

DATED December 23, 2016.


Respectfully submitted,

__/s  Drew G. Johnson_____
Drew G. Johnson
E-mail: drew@leimanlaw.com
Oregon State Bar No.:  114289
44 W. Broadway, Suite 326
Eugene, OR  97401
Telephone: (541) 345-2376
Facsimile:  (541) 345-2377
Attorney for Plaintiff

_/s  Alan J. Leiman_____
Alan J. Leiman
E-mail: alan@leimanlaw.com
Oregon State Bar No.:  98074
44 W. Broadway, Suite 326
Eugene, OR  97401
Telephone: (541) 345-2376
Facsimile:  (541) 345-2377
Attorney for Plaintiff